# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

## MEMORANDUM

**TO:**  All Counsel of Record

**FROM:**  Clifford R. Jackson

**DATE:**  November 26, 2019

Re:  18-2181  Charles Hamner v. Danny Burls, et al

On September 11, 2019 the Court issued an opinion in the referenced appeal. Please replace your opinion with the attached amended opinion. A citation on page six of the original opinion was revised.

cc:  All Circuit Judges
St. Paul Clerk's Office
West Publishing
Missouri Lawyers Weekly

District Court/Agency Case Number(s):  5:17-cv-00079-JLH

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2181
_____

Charles Hamner,

*Plaintiff - Appellant*,

v.

Danny Burls, Warden, Maximum Security Unit, ADC; Connie Jenkins, Classification Supervisor/Officer, Maximum Security Unit, ADC; Maurice Williams, Major, Maximum Security Unit, ADC; Steve Outlaw, Deputy Warden, Maximum Security Unit, ADC; Marvin Evans, Deputy Director, ADC,

*Defendants - Appellees*.

------------------------------

Professors and Practitioners of Psychiatry and Psychology,

*Amicus on Behalf of Appellant*.
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff
_____

Submitted: July 3, 2019
Filed: September 11, 2019 (Amended November 26, 2019)
_____

Before COLLOTON, GRUENDER, and ERICKSON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Charles Hamner sued Arkansas prison officials under 42 U.S.C. § 1983 alleging deprivations of his constitutional rights while incarcerated. He sought injunctive and declaratory relief and damages. The district court[1] concluded that Hamner's complaint failed to state a claim and dismissed the action. In Hamner's appeal, only the claim for damages presents a continuing case or controversy. We affirm on the alternative ground that the complaint does not adequately allege a violation of Hamner's clearly established constitutional rights, so the defendants are entitled to qualified immunity.

I.

For purposes of a motion to dismiss, we take the facts as alleged in Hamner's pleadings as true and apply all reasonable inferences in his favor. Hamner is an inmate in the custody of the Arkansas Department of Corrections. He suffers from a number of mental health problems, including borderline personality disorder, post-traumatic stress disorder, antisocial personality disorder, anxiety, and depression. He takes daily medication, as prescribed by a mental health physician.

In March 2015, Hamner alerted prison authorities to a potential attack by another inmate against a prison guard. On March 26, after providing prison officials more details about the planned attack, he was transferred from general population to administrative segregation. Hamner remained in administrative segregation for 203 days, ultimately transferring back to general population on October 15, 2015. Hamner alleges that while administratively segregated, he received no satisfactory

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, adopting the reports and recommendations of the Honorable Beth Deere, United States Magistrate Judge for the Eastern District of Arkansas.

-2-

justification for his transfer; the only written explanation allegedly came on August 12 and cited "security concerns." Although Hamner details a long series of reviews and internal grievances, he claims that none of these processes followed "meaningful or relevant standards."

While in administrative segregation, Hamner remained in his cell for twenty-three hours per day, leaving for "one hour a day, five days per week," if security concerns or weather did not interfere. Hamner was allowed three showers per week, three phone calls per week, and often served cold food. He had no television in his cell, and could not see the public television in the hallway due to distance and an obstructed view. He was allowed to keep a limited number of books in his cell, but complains that his light bulb was often burned out, "making it hard to see or read anything for days." He also lost his job and could not receive vocational training. He had no roommate and "rarely any human contact."

Administrative segregation allegedly affected Hamner's health. He describes being "deprived of his prescribed adequate medical treatment and medication" and having his "pleas" for treatment "ignored." These deprivations, combined with the stress of solitary confinement and the alleged futility of his review process, impacted his mental health: he "often couldn't sleep, had a lack of appetite, hallucinations, nightmares, restlessness, anxiety and panic attacks," and felt a risk of "irreparable emotional damage" or suicide. Hamner alleged that he was "skipped [r]andomly at pill call," and that officers working in the administrative segregation unit knew about the gaps in his treatment.

In March 2017, Hamner sued under 42 U.S.C. § 1983, asserting that members of the prison classification committee had violated his rights under the Fourteenth Amendment by subjecting him to atypical and significantly worse prison conditions without adequate procedural protections. He claimed that the prison's periodic reviews were superficial and did not provide him a meaningful opportunity to

challenge his extended period of segregation. He also claimed that prison officials had retaliated against him for filing grievances. The defendants were warden Danny Burls, classification supervisor Connie Jenkins, building major Maurice Williams, deputy warden Steve Outlaw, and deputy director Marvin Evans.

The district court screened Hamner's claim under 28 U.S.C. § 1915A and concluded that Hamner's detention in administrative segregation for "nearly seven months" did not implicate a protected liberty interest. The court thus dismissed Hamner's due process claim with prejudice, but allowed the retaliation claim to proceed.

Hamner then filed an amended complaint expanding his due process argument, reiterating his retaliation claim, and raising new claims under the Eighth Amendment—alleged deliberate indifference to his serious medical needs and unconstitutional conditions of confinement. He sought damages, a declaratory judgment, and injunctive relief. The district court dismissed all counts for failure to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Hamner appeals the dismissal of his claims based on the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

II.

Hamner is no longer in administrative segregation, and he concedes that his claim for injunctive relief is moot. Any claim for declaratory relief is likewise moot. *Cf. Smith v. Hundley*, 190 F.3d 852, 854-55 (8th Cir. 1999). As Hamner acknowledged at oral argument, the only ongoing case or controversy involves his claims for damages.

In that circumstance, an obvious question is whether the prison officials are entitled to qualified immunity. Qualified immunity does not apply to a claim for

Appellate Case: 18-2181     Page: 4     Date Filed: 11/26/2019 Entry ID: 4855981

injunctive relief, but it shields government officials from suits for damages under § 1983 if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The immunity is an *immunity from suit*, not merely from liability. It is designed "to avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (alteration in original) (quoting *Harlow*, 457 U.S. at 817-18). Especially where a decision on qualified immunity is more straightforward than resolving a novel question of constitutional law, the Supreme Court has counseled that "courts should think hard, and then think hard again, before turning small cases into large ones." *Camreta v. Greene*, 563 U.S. 692, 707 (2011).

Because the parties had not briefed the issue, we requested supplemental filings to address whether any or all of the district court's judgment should be affirmed based on qualified immunity. Hamner responded that because the officials raised qualified immunity in their answer only as to his retaliation claims, but not in their motion to dismiss his due process and Eighth Amendment claims, the defense of qualified immunity was waived or forfeited for purposes of the pleading stage. The officials say not so: They initially had no occasion to raise qualified immunity on the due process claim, because the district court dismissed it before the defendants were even served with process. *See* 28 U.S.C. § 1915A. The officials then moved to dismiss the amended complaint (including the new Eighth Amendment claims and the renewed due process claim) for failure to state a claim, without filing an answer, and succeeded in obtaining a dismissal.

In *Story v. Foote*, 782 F.3d 968 (8th Cir. 2015), we concluded that even where an appellee did not argue qualified immunity as an alternative ground for affirmance, it was appropriate to resolve the appeal on that basis where the defense was

-5-

established on the face of the complaint. *Id.* at 970. Hamner contends that *Story* is distinguishable, because the defendant there had no opportunity to raise qualified immunity in the district court; the case was dismissed before service of process under 28 U.S.C. § 1915A. Here, by contrast, the defendants moved to dismiss the amended complaint, and argued successfully that Hamner failed to allege a constitutional violation. But because the defendants did not argue a fallback position that they are entitled to qualified immunity, Hamner says that we must turn a small case into a large one and address only the constitutional questions decided by the district court.

We are satisfied that it is appropriate to consider whether the defendants are entitled to qualified immunity. We may affirm a judgment on any ground supported by the record; where qualified immunity is evident on the face of a complaint, it is an available basis for decision. *Jacobson v. McCormick*, 763 F.3d 914, 916-17 (8th Cir. 2014); *Fabrikant v. French*, 691 F.3d 193, 211-12 (2d Cir. 2012); *Graves v. City of Coeur d'Alene*, 339 F.3d 828, 845 n.23 (9th Cir. 2003). Although the defendants here did not raise qualified immunity in their motion to dismiss, the posture of the case has materially changed. The claims for declaratory and injunctive relief are now concededly moot; all that remain are Hamner's claims for damages, and qualified immunity could be dispositive as to the only claims left on appeal.

In that circumstance, we see no bar to addressing qualified immunity. Whether the allegations show a violation of a clearly established right is a purely legal issue that is amenable to consideration for the first time on appeal. The parties have been given notice and an opportunity to be heard on the issue in thorough supplemental briefs. The defendants have made clear that *if* this court were to reject the district court's decision on any claim, then they would promptly assert a defense of qualified immunity on remand. In that event, after the district court resolved the qualified immunity issue, the case inevitably would return to us for a decision on that point in a second appeal. There is nothing to be profited by that procedural roundabout.

To overcome a claim of qualified immunity, Hamner must establish that (1) the facts alleged in the complaint make out a constitutional violation and (2) that the right violated was "clearly established." *Pearson*, 555 U.S. at 232. For a right to be "clearly established," the law must have been sufficiently clear, at the time of the official's conduct, to put every reasonable official on notice that what he was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A plaintiff need not cite "a case directly on point," but "controlling authority" or "a robust 'consensus of cases of persuasive authority'" must have put "the statutory or constitutional question beyond debate" as of the date of the alleged violation. *Id.* at 741-42 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

We first consider Hamner's claim of deliberate indifference to his serious medical needs. Hamner asserts that the deprivation of his medication on several occasions, combined with the stresses of his administrative segregation, resulted in anxiety, hallucinations, and even suicidal thoughts. He alleges "that his 'pleas' for psychological treatment were 'ignored,'" and that the defendants "all knew [he] was a mentally ill inmate," and were "aware" that he was not receiving his medication.

Despite the seriousness of Hamner's alleged medical needs, we conclude that the defendants did not violate his clearly established rights. Mere negligence in diagnosing or treating a medical condition does not rise to the level of an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prisoner must allege instead "(1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006) (alteration in original) (internal quotation omitted). Prison officials may not deliberately delay or deny prisoners' medical care, *see Orr v. Larkins*, 610 F.3d 1032, 1034-35 (8th Cir. 2010) (per curiam), but a plaintiff "must show more than negligence, more even than gross negligence," to make out a constitutional violation. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

-7-

Hamner alleges that there were gaps in administration of his daily medication and that the defendants were aware of this failure to treat Hamner's serious medical needs.  But Hamner's pleadings also include an exhibit showing that prison officials responded to his grievances and took steps to ensure that Hamner received his prescribed medication.  He describes one nurse as repeatedly failing to distribute his daily medication, but the same exhibit conveys that her superiors determined that the nurse would "be counseled individually on the importance of medication administration and documentation."  A manager of prison health services also pledged to ask leadership at Hamner's site to review his record periodically to ensure that he was receiving his medication as prescribed.  Hamner also notes that his mental health counselor asked during classification hearings whether he was receiving his medication.  The defendants were not personally responsible for administering Hamner's medication.

These facts distinguish the alleged deprivation of Hamner's rights from the violations recognized in our previous decisions.  Hamner says that *Langford v. Norris*, 614 F.3d 445 (8th Cir. 2010), clearly established that officials violate the Eighth Amendment when they ignore "complaints about receiving deficient medical care."  *Id.* at 462.  But the facts in *Langford* were quite different:  the case involved a medical services administrator's failure to address two prisoners' prolonged, serious medical needs.  *Id.* at 460-61.  One prisoner alleged that he suffered stomach and back pain for years, resulting in at least two hospital visits for emergency care, and the other prisoner endured irreversible deformity in his foot due to lapses in treatment after surgery.  *Id.*  Despite knowing about these medical problems, the administrator did little to ameliorate the situation, telling one prisoner to use the internal grievance system and assuring both prisoners that he would refer their matter to another administrator.  *Id.* at 461-62.

Hamner, by contrast, did not languish for years without proper medical care:  his pleadings describe nine occasions when he did not receive his daily treatment

-8-

during his time in administrative segregation. Although he alleges that gaps "continue[d] to happen," the prison officials at least attempted to fix the problems that did arise. Likewise, Hamner's reliance on *Johnson-El v. Schoemehl*, 878 F.2d 1043 (8th Cir. 1989), is misplaced, for the constitutional violations alleged there involved a jail's systemic failure to afford inmates adequate medical care. *Id.* at 1054-55. The *Johnson-El* plaintiffs asserted that medical attention was available only once per week, with additional assistance left to the discretion of guards, and that wait times for seeing a doctor could range from two weeks to a month. *Id.* Hamner does not allege that the defendant prison officials endorsed or deliberately ignored such a widespread failure of care.

In evaluating an officer's claim to qualified immunity, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted). Neither *Langford* nor *Johnson-El* shows that the "*particular* conduct" alleged in Hamner's pleadings runs afoul of the Eighth Amendment. A reasonable prison official, aware of the alleged gaps in Hamner's treatment, could have understood the Eighth Amendment to allow administrators an opportunity to fix problems that arise in a prison's health care system by responding to grievances and taking corrective actions.

Hamner's next Eighth Amendment claim also fails to overcome qualified immunity. He alleges that prison officials were deliberately indifferent to the risk of serious harm arising from the conditions of his administrative segregation in light of his serious mental illness. To establish a conditions of confinement claim, a plaintiff must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the prison official whose action or omission caused the deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). "We may

-9-

infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

Hamner alleges that the defendants knew that he was "seriously mentally ill" and that his confinement "risked irreparable emotional damage or a death by suicide." He argues that since *In re Medley*, 134 U.S. 160, 168 (1890), courts have recognized the damaging effects of solitary confinement. He contends that "it is now beyond serious dispute" that administrative segregation poses serious risks, which are "particularly pronounced for prisoners with mental illness." He points to our decision in *Simmons v. Cook*, 154 F.3d 805 (8th Cir. 1998), as establishing that solitary confinement, together with a prisoner's physical limitations, can deprive him "the minimal civilized measure of life's necessities." *Id.* at 808 (internal quotation omitted).

To defeat qualified immunity, however, "the clearly established law must be particularized to the facts of the case" and not "defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (internal quotation marks omitted). None of the prior decisions involved a mentally ill prisoner in administrative segregation, and they do not demonstrate that the prison officials here violated a clearly established right. Indeed, although *Orr* did not involve a conditions of confinement claim, this court rejected a claim that prison officials violated the Eighth Amendment by holding a mentally ill prisoner in administrative segregation for nine months while providing treatment. *See* 610 F.3d at 1033-35. Other decisions have concluded that certain hardships that Hamner faced while in administrative segregation do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (lack of television and restrictions on outdoor access); *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) (cold food). *Simmons* involved very different facts: inmates who used wheelchairs could not reach the food tray slot in prison cells, and the toilets had no handrails, but

-10-

officials with knowledge of these conditions did nothing to provide food or assist with bowel movements. 154 F.3d at 808.

Hamner maintains that various studies on solitary confinement and decisions of other circuits placed the defendants on notice that subjecting a prisoner with Hamner's mental illnesses to prolonged administrative segregation violates the Eighth Amendment. Although "a robust consensus of cases of persuasive authority" may suffice to put a "constitutional question beyond debate," *al-Kidd*, 563 U.S. at 741-42 (internal quotation marks omitted), Hamner fails to demonstrate such authority existed as of October 2015. The principal decisions concern disparate circumstances. In one, a prisoner claimed that he spent several months in segregation where he was "sometimes denied water for up to a week," "not permitted sufficient exercise time," and "subjected to repeated physical abuse." *Walker v. Shansky*, 28 F.3d 666, 672-73 (7th Cir. 1994). Another involved a prisoner who was confined in a windowless cell with substantial periods of darkness and a toilet consisting of a hole in the floor that the prisoner could not flush. *LaReau v. MacDougall*, 473 F.2d 974, 977-78 (2d Cir. 1972). A third concerned a disabled prisoner deprived of handicap-accessible toilet facilities. *LaFaut v. Smith*, 834 F.2d 389, 392-93 (4th Cir. 1987). Scholarly literature about negative effects of segregation may influence prison administrators and future court decisions, but it likewise does not establish that the constitutional question raised by Hamner was beyond debate in 2015.

Hamner's allegations identify a combination of circumstances that was not present in previous cases. We do not gainsay that lengthy administrative segregation of an inmate with serious medical illness and no access to television or regular reading material requires different analysis than solitary confinement of prisoners with no history of psychiatric difficulties and milder restrictions. That Hamner presents a debatable argument for distinguishing prior decisions and breaking new legal ground, however, does not suffice to allege that the officials violated a clearly established right.

-11-

Finally, Hamner argues that his Fourteenth Amendment rights were violated when prison officials placed him in administrative segregation for 203 days without affording him proper procedural avenues for challenging his classification. Prisoners have a liberty interest in freedom from conditions of confinement that impose "atypical and significant hardship" relative to "ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration and degree of restrictions bear on whether a change in conditions imposes such a hardship. *Id.* at 486. Hamner contends that the conditions of his confinement in administrative segregation departed materially enough from his experience in general population to trigger a liberty interest. He also claims that prison officials afforded him inadequate process by failing to articulate a clear justification for his placement in administrative segregation and to afford meaningful periodic review of his classification thereafter.

Hamner identifies no circuit precedent holding that an inadequate justification for administrative segregation or shortcomings in review of a prisoner's placement violate the Due Process Clause. Instead, he attempts to derive a set of legal rules from cases in which we have held that prisoners did *not* allege a sufficient liberty interest. He notes that in *Phillips v. Norris*, 320 F.3d 844 (8th Cir. 2003), a thirty-seven-day restriction on a prisoner's exercise privileges "push[ed] the outer limits of acceptable restriction." *Id.* at 847. And he argues that in *Rahman X*, the significant restrictions on the inmate's privileges were inadequate to establish a liberty interest only because the inmate previously resided in restrictive death-row housing, not in the general population like Hamner. *See* 300 F.3d at 973-74.

None of the cited cases, however, clearly establishes the "violative nature of [the] *particular* conduct" in question here. *Mullenix*, 136 S. Ct. at 308 (internal quotation omitted). Our precedents have said that "a demotion to segregation, even without cause, is not itself an atypical and significant hardship," *Phillips*, 320 F.3d at 847, and held that nine months in administrative segregation did not deprive a mentally ill prisoner of a liberty interest. *Orr*, 610 F.3d at 1033-34; *see also Hemphill*

-12-

*v. Delo*, No. 95-3357, 1997 WL 581079, at *2 (8th Cir. Sept. 22, 1997) (per curiam) (holding that "four days locked in [a] housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation" did not constitute an atypical and significant hardship). While it is possible in this fact-specific area that a combination of circumstances involving solitary confinement could curtail a liberty interest, *e.g.*, *Incumaa v. Stirling*, 791 F.3d 517, 531-32 (4th Cir. 2015); *Williams v. Norris*, 277 F. App'x 647, 648-49 (8th Cir. 2008) (per curiam), it is not beyond debate that the defendant officials did so by segregating a prisoner with Hamner's particular medical condition for 203 days under the conditions alleged. Where Hamner's only remaining claim is for damages, we conclude that the officials are entitled to qualified immunity.

\*   \*   \*

The judgment of the district court is affirmed.

ERICKSON, Circuit Judge, concurring.

I concur in the majority's analysis, but write separately to express my concerns about Hamner's placement in administrative segregation and our reluctance to meaningfully address the significant hardship imposed on inmates placed in isolation, particularly those with pre-existing mental health issues. In light of the detrimental and devastating effects that placement in administrative segregation has on the human psyche, I am troubled in this case by both the prison administrators' lack of process and their failure to comply with their own policies. While I agree that there is currently no precedent in our court establishing a due process violation for failing to provide adequate procedural protections in the context of administrative segregation, I believe that the Constitution requires, at a minimum, an opportunity for meaningful review when prison administrators impose restrictions on an inmate as significant and as potentially injurious as placement in administrative segregation. I also believe that

-13-

the time has come to revisit our precedent that ignores the known negative effects of segregation and isolation.

Hamner alleged that the Arkansas Department of Corrections violated its own policies and the Due Process Clause by failing to provide an adequate justification for administrative segregation and by allowing a review process that essentially provided no meaningful review. Hamner was denied a probable cause hearing required by prison policy to take place within 72 hours of placement in administrative segregation. When the hearing actually occurred, Hamner was neither given advance notice of it nor an opportunity to appear. By the time Hamner was allowed to appear, more than a dozen days had passed. Hamner further alleged that prison policy provides for review hearings every seven days for the first two months. Documentation of the first seven-day review hearing in the record is dated May 13, 2015, when Hamner had been in administrative segregation for six weeks. It is uncontroverted that the check-the-box form completed by prison officials following the hearing gave no reason for Hamner's initial assessment or continued placement in administrative segregation. In fact, the forms completed following the review hearings contained no rationale for the initial placement or justification for continued placement in administrative segregation until August 12, 2015 (more than four months after Hamner was originally placed in administrative segregation) and then the form only contained the handwritten words "security concerns." Hamner disputes that he ever expressed a security concern. No findings were made that evidenced the nature of the alleged security concern.

Hamner was inexplicably confined in administrative segregation for nearly five months without any explanation. During the almost seven months he was held in administrative segregation, he was given no meaningful opportunity to challenge his placement in isolation. As noted by the majority, we have consistently said that placement in administrative segregation, even without cause, is not itself an atypical and significant hardship. Given the developing science of mental health and what is

-14-

now known – that is, the profound detrimental and devastating impact solitary confinement has on an inmate's psyche, particularly an inmate with pre-existing mental illnesses – we can only reach the conclusion that this type of isolation is, as a matter of law, not an atypical and significant hardship if we ignore reality. The majority acknowledges that "[s]cholarly literature about negative effects of segregation may influence prison administrators and future court decisions." I suggest the time has come to consider that literature and reverse the precedent that stands for the proposition that isolation is not a significant hardship with constitutional implications. If we also factor in the prison administrators' failure to provide any explanation for Hamner's placement in administrative segregation for nearly five months and the hollow review process afforded him, I believe Hamner has shown a sufficient hardship to trigger a liberty interest. But, because I reluctantly conclude that our precedent precludes a finding of the existence of a clearly established constitutional right giving sufficient notice to prison administrators, I concur.

_____

-15-



18-2181 Charles Hamner v. Danny Burls, et al "Amended Opinion Filed" (5:17-cv-00079-JLH)

ca08ml_cmecf_Notify    to:                                    11/26/2019 10:55 AM

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

### Eighth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was filed on 11/26/2019

**Case Name:**    Charles Hamner v. Danny Burls, et al
**Case Number:**  18-2181
**Document(s):**  Document(s)

**Docket Text:**
AMENDED OPINION FILED - THE COURT: STEVEN M. COLLOTON, RAYMOND W. GRUENDER and RALPH R. ERICKSON
AUTHORING JUDGE: Steven M. Colloton (PUBLISHED),
CONCUR BY: Ralph R. Erickson.
Original Opinion filed on: 09/11/2019 Amendment to opinion: Revised citation on page six.
. [18-2181] (Clifford Jackson)

**Notice will be electronically mailed to:**

Mr. William C. Bird, III: william.bird@arkansasag.gov, katie.wilson@arkansasag.gov, agcivil@arkansasag.gov
Ms. Ruth Zemel Brown: ruth@loevy.com, ethan@loevy.com
Honorable Beth M. Deere, US Magistrate Judge: Beth_Deere@ared.uscourts.gov
Ms. Christin Jaye Eaton: christin.eaton@faegrebd.com
Ms. Claudia M. Flores: cmflores@uchicago.edu
Mr. Vincent P. France, Assistant Attorney General: vincent.france@arkansasAG.gov, crystal.carey@arkansasag.gov, agcivil@arkansasag.gov
Ms. Nicole Brianne Godfrey: ngodfrey@law.du.edu
Ms. Sarah Grady: sarah@loevy.com, andrew@loevy.com
Mr. Daniel Mark Greenfield: daniel-greenfield@law.northwestern.edu, emily.clark@macarthurjustice.org, earl.lin@macarthurjustice.org, shawn.mcgee@law.northwestern.edu
Ms. Nino Guruli: nguruli@uchicago.edu
Honorable J. Leon Holmes, Senior District Judge: Leon_Holmes@ared.uscourts.gov

Ms. Danielle C. Jefferis: djefferis@law.du.edu
Ms. Debra Loevy: debra@exonerationproject.org, blake@loevy.com
Ms. Amy Marshak: as3397@georgetown.edu, jmd383@georgetown.edu
Ms. Mary McCord: mbm7@georgetown.edu
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. Nicholas Matthew McLean: nmclean@cades.com
Mr. Jay Remington Schweikert: jschweikert@cato.org
Ms. Julie Wahlstrand: julie.wahlstrand@faegrebd.com, debra.egan@faegrebd.com, shelley.meyer@faegrebd.com
Mr. Seth T. Wayne: sw1098@georgetown.edu
MO Lawyers Weekly: michaelh@mesjassociates.com, clash@molawyersmedia.com
West Publishing: us08@westdcs.west.thomson.com


**Notice will be mailed to:**


Mr. Charles Hamner
ARKANSAS DEPARTMENT OF CORRECTIONS
P.O. Box 1630
Malvern, AR 72104-1630

Mr. Taylor Volkman
UNIVERSITY OF DENVER STURM COLLEGE OF LAW
2255 E. Evans Avenue
Denver, CO 80208

The following document(s) are associated with this transaction:
**Document Description:** Opinion Correction Memo
**Original Filename:**
/opt/ACECF/live/forms/CliffordRJackson_182181_4855981_OpinionCorrectionFiledMemo_159.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=11/26/2019] [FileNumber=4855981-1]
[150928a3651c800019b7cac5d6e88fd08fcf4093396cc0b9420536eace03e239b41f5a6d43ba7ae8f5f7cc2ff08d56df62b7285b96f908f357718f53406a136f]]
**Recipients:**
- Mr. William C. Bird, III
- Ms. Ruth Zemel Brown
- Honorable Beth M. Deere, US Magistrate Judge
- Ms. Christin Jaye Eaton
- Ms. Claudia M. Flores
- Mr. Vincent P. France, Assistant Attorney General
- Ms. Nicole Brianne Godfrey
- Ms. Sarah Grady
- Mr. Daniel Mark Greenfield

- [Ms. Nino Guruli](#)
- [Mr. Charles Hamner](#)
- [Honorable J. Leon Holmes, Senior District Judge](#)
- [Ms. Danielle C. Jefferis](#)
- [Ms. Debra Loevy](#)
- [MO Lawyers Weekly](#)
- [Ms. Amy Marshak](#)
- [Ms. Mary McCord](#)
- [Mr. Jim McCormack, Clerk of Court](#)
- [Mr. Nicholas Matthew McLean](#)
- [Mr. Jay Remington Schweikert](#)
- [Mr. Taylor Volkman](#)
- [Ms. Julie Wahlstrand](#)
- [Mr. Seth T. Wayne](#)
- [West Publishing](#)

**Document Description:** 18-2181 Amended Published Opinion
**Original Filename:** 182181P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=11/26/2019] [FileNumber=4855981-0]
[a50c66c21ef9e7a968103e8c4bad628ae74d5dc1f3cfbff5d1d32cb695235171bf0dbec31235552cc
c0850f8909d571e5256079ffafcb5825f95b596ac9c0ef1]]

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 4855981
**RELIEF(S) DOCKETED:**
   for publication
   concurrence
**DOCKET PART(S) ADDED:** 6421476, 6421477, 6421478, 6421479